UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                      Case No. 10-cr-133-pp

AMANI P. BOOKER,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S *PRO SE* LETTER MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DKT. NO. 138)**

---

On January 21, 2011, District Judge Charles N. Clevert, Jr. sentenced the defendant to serve 168 months (fourteen years) in prison after the defendant pled guilty to one count of sex trafficking a child. Dkt. Nos. 35 (plea agreement); 66 (judgment). Judge Clevert followed the fourteen-year incarceration term with a term of five years of supervised release. Dkt. No. 66.

On October 12, 2021, the defendant transitioned from prison to a residential reentry center in Milwaukee. Dkt. No. 104. On July 21, 2022, he began his term of supervision. Dkt. No. 105 at 1. From the start, the defendant struggled with supervision. Only five days after his supervision term started, the probation office was notified by the victim witness coordinator in the U.S. Attorney's Office that there was evidence that the defendant had had contact with the victim, directly and indirectly. Id. He also tested positive for marijuana and methamphetamine upon his release from the residential reentry center. Id.

1

The court added to the supervision conditions an order that the defendant have no contact with the victim. Id. at 2.

On August 18, 2022, the defendant again tested positive for marijuana and methamphetamine. Dkt. No. 107 at 1. Probation advised the court that the defendant had missed some of his AODA counseling sessions, that he'd admitted to smoking marijuana and that he had not been taking his anti-anxiety medication. Id. at 1-2. Probation learned that the defendant had been traveling outside the district without the permission of probation or the court (he said it was for a job, but he had not discussed this with his probation officer). Id. at 2. Although a sex offender assessment resulted in a recommendation that the defendant participate in a cognitive intervention program, he declined to do so. Id. at 2-3.

The court held a hearing on October 24, 2022. Dkt. No. 116. At that hearing, the defendant advised the court that he'd gotten side-tracked because he had a lot going on—he felt overwhelmed with caring for his children, working two jobs and stress from his family members. Id. at 2. He agreed to participate in cognitive intervention programming. Id. The court advised him to communicate with his probation officer and cautioned him that if there were further violations, there would be another haring. Id.

On January 4, 2023, the defendant appeared for another hearing. Dkt. No. 119. The defendant still had not attended cognitive intervention, but he'd started taking some new mental health medication. Id. at 1. The court ordered that before the next hearing, the defendant must attend and actively

participate in the cognitive intervention program, give his probation officer information about his doctor and his medications, meet with the probation office's community liaison officer and get a reliable telephone number. Id. at 2.

By mid-April 2023, things had improved. The probation office reported that the defendant had obtained a job and would be starting soon, and he'd not committed any additional violations. Dkt. No. 122 at 2. So the court adjourned the next scheduled hearing. Id. Then in May 2023, probation reported that the defendant had missed three random drug tests and, on May 23, 2023, had admitted using marijuana. Dkt. No. 123 at 2. Probation recommended that the court require the defendant to participate in mental health treatment and take prescribed medications as directed. Id.

By August 2023, the defendant had tested positive another three times (and, to his credit, had admitted his marijuana use). Dkt. No. 124 at 4. He had missed another three drug tests since the May report and had not scheduled an appointment for a mental health evaluation. Id. at 3. He did have a job, but had been evicted and was couch-surfing. Id. On October 17, 2023, the court held a revocation hearing. Dkt. No. 132. By that time, the defendant had reported having gotten employment, had again tested positive for marijuana and had made a mental health appointment (and attended it). Id. at 1. After hearing from the parties and the defendant, the court concluded that there was nothing particularly new in the events that had transpired—the defendant had been having the same issues since the start of his supervision. Id. at 2. The court opined that the mental health component was important; it adjourned

3

the revocation hearing and told the defendant that he *must* participate in mental health treatment and maintain his employment at his new job. Id. It advised him that if the defendant could not do these things, it would have no choice but to revoke him because he'd tested positive more than three times in the past year. Id.

On November 28, 2023, the parties again appeared in the courtroom. Dkt. No. 136. The court recounted that it had learned from probation that the defendant had attended and participated in mental health treatment and had provided a paystub verifying his employment. Id. at 1. He'd continued to struggle with drug use and missed drug tests. Id. Because the defendant had had three positive drug tests in the past year, the court revoked his supervised release, but imposed a sentence of time served followed by forty-three months of supervised release. Id. at 2. It emphasized the defendant's need to get a handle on his drug use. Id. Acknowledging that it was imposing a long term of supervised release, the court told the defendant that "if he continues with his mental health treatment, maintains his employment, tests negative for drugs, takes drug tests as required and complies with the other conditions of his supervised release, it would consider terminating the defendant's supervised release early." Id.

In mid-February 2024, the court received a copy of a letter the probation office had sent to the defendant, admonishing him for his continued drug use.

Fifteen months after the November 2023 revocation hearing—that is, on March 14, 2025—the court received from the defendant a letter asking the court to "remove" him from supervision. Dkt. No. 138. The letter said:

> The last conversation we had I was suppose to accomplish a couple things for this to happen. I believe I have mad[e] those accomplishment's. First off I stop the use of marijuana to cope with my daily problems that I was running into and just things in life period. I've learned to cope with these things by replacing my time doing something constructive like working on my own business and learning more about advertising and marketing which will help me further my business ventures in the future to keep me living a prosocial life. My Company name is P&A Movers and Cleaners (Professional and Affordable Movers and Cleaners) Basically moving of furniture and things of that nature and clean outs and haul away. I have already provided my PO with my EIN numbers and business logos and also asked for help from the second chance act for cleaning supplies and tools to help me further my business. I have made all of my regularly scheduled appointments and have dropped clean each time in which you can ask Mr. White[1] for verification. I have taken therapy sessions with Mrs Taryn Motley in which she has helped me in gaining and developing some boundaries and a return to use of cog models like RSA's when something is bothering me. I am currently living with a friend for the time being as I save some money to find my own place. I believe it would be beneficial for me to be released from papers because I have completed these task and now I am a bit inconvenienced by having to stop possible work to see my PO for a office visit to do a USA that has been clean for at least the last twelve months. In conclusion I hope you take all this into consideration of releasing me from supervision. Thank you in advance for your time on this matter.

Id.

The court asked probation and the government for their views on the defendant's request. Dkt. No. 139. The government opposes the request. Dkt. No. 140. It reminds the court that the defendant received a fourteen-year sentence for sex trafficking a child, and that thirteen months into his five-year

---

[1] The defendant's supervising agent is Mr. White.

supervision term, he was revoked for the various violations the court has described above. Id. at 2. The government concedes that since being revoked, the defendant has not dropped dirty and that he has been doing well in mental health treatment. Id. at 3. But the government argues that given the serious nature of his crime in this case, as well as some other acts of violence reflected in the presentence investigation report, "the very limited intrusion of continuing his supervised release is warranted to not only continue his progress, but for the safety of the community." Id.

Probation reports that after the November 2023 revocation hearing, the defendant admitted continued marijuana use, and that from December 12, 2023 to May 9, 2024, he had six positive drug tests. Dkt. No. 141 at 3. But starting in May 2024, he had tested negative every time (with the exception of a day that he wasn't able to provide a sample), and he'd been present for every appointment and had been communicating with his probation officer between appointments. Id. Probation also reported that the defendant had been attending mental health services and that his counsel reported that he'd made "great progress in treatment." Id. Probation discussed the defendant's moving and cleaning business and the documentation he'd provided. Id. at 2. Probation also advised the court that the defendant was current with his sex offender registration requirements. Id. As for housing, probation reported (as had the defendant) that the defendant was living with a friend from time to time, but that he'd also been sleeping in his car or at the homes of other friends. Id. Generally speaking, the defendant's probation officer reported that

6

he had "made strides in his drug rehabilitation and family reintegration," and that the probation officer had observed "that he has improved his attitude, and he has given more effort to being successful on supervision." Id. at 3.

It has been seventeen months since the defendant's last violation (a positive drug test). Currently he is scheduled to complete his supervised release term in June 2027—twenty months from now. The court commends the defendant. He has made significant progress since his early days on supervision. He's now taking his mental health seriously, communicating with his probation officer and working. He's had no criminal violations over the last seventeen months. He really has turned things around and the court can see that he is trying. He should be very proud of himself.

The defendant has earned early termination of his supervision. The only concerning issue is the defendant's lack of stable housing. The court would like to see him in a more stable living situation. The court will terminate the defendant's supervised release term as of March 31, 2026—fifteen months early. *But*—if the defendant obtains stable housing before that time (and can provide his probation officer with proof of that stable housing), as well as complying with the other conditions of his supervision (as he has been doing), the court is willing to terminate his supervised release upon the probation office's receipt of proof of stable housing. In other words, the defendant's supervised release will end on March 31, 2026 regardless, but if he obtains and proves that he has obtained stable housing, it will end sooner than that.

7

The court **GRANTS** the defendant's *pro se* letter motion for early termination of supervised release. Dkt. No. 138.

The court **ORDERS** that, as long as the defendant does not have further violations of supervised release (particularly as long as he commits no criminal offenses, stays clean, continues to work and complies with any mental health requirements), the defendant's term of supervised release will **TERMINATE** at the end of the day on **March 31, 2026**.

The court **ORDERS** that if, before March 31, 2026, the defendant obtains stable housing, and provides probation with acceptable proof that he has done so, the probation office and the defendant may notify the court of that fact, and the court will terminate the defendant's supervised release sooner that March 31, 2026.

Dated in Milwaukee, Wisconsin this 4th day of November, 2025.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge

8

Case 2:10-cr-00133-PP  Filed 11/05/25  Page 8 of 8  Document 142